IRMA L. HARRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LEILA K. LIEBMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 5594, 5595. Promulgated July 23, 1945.

*Marion Smith, Esq.*, and *Bertram S. Boley, Esq.*, for the petitioners.
*S. Earl Heilman, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: These proceedings involve proposed deficiencies in income tax for the year 1941 as follows:

| Name | Docket No. | Deficiency |
|------|------------|------------|
| Irma L. Harris | 5594 | $811.43 |
| Leila K. Liebman | 5595 | 2,337.07 |

The question is whether the capital loss sustained by the testamentary trust on the sale of shares of stock constitutes a charge against the income of the trust or against the corpus.

The facts are found as stipulated and are summarized herein.

The petitioners, Irma L. Harris and Leila K. Liebman, individuals, residents of Atlanta, Georgia, filed their returns for the year involved with the collector of internal revenue for the district of Georgia. Isaac Liebman, who died testate in 1924, created a testamentary trust and appointed Leila K. Liebman, his wife, and his two daughters, Irma L. Harris and Edna L. Rothschild, as executrices. The will provided that any two of such executrices shall control "in any question arising as to my estate in the execution of same." Petitioners are two of the persons named as beneficiaries under the testamentary trust.

Item IV of the will is as follows:

I further desire and direct that my executors, of [sic] their successors, as herein provided, may keep intact all and singular the entire residue of my estate, real and personal, or its proceeds, in order to effectuate the following bequests and devises:

Said executors shall pay one-half the income from said property to my wife, Leila K. Liebman, during her life or widowhood, and the remaining one-half of the income of said property to my children, Irma Liebman Harris and Edna Liebman Rothschild, or the surviving children of either of said daughters. In the event of the death of either of my said children leaving no children, then her proportionate part of said income shall be paid to the remaining child, or her children, if she be not living. In the event of the death of my said wife, all of the property referred to in this Item, or its proceeds, shall immediately vest in my two children, or the surviving children of either, or in case of death of either of said children without children, then to the surviving child or her children.

In the event of the remarriage of my wife, I desire that all of the property referred to in this Item, or its proceeds, shall be divided equally into three parts between my wife and children, and in the event of the death of either of my daughters at said time, then to their surviving children; it being my intent that my wife shall in the event of her remarriage have one-third of all the corpus of my estate referred to in this Item in whatever form it may have been invested, and my daughters, or their surviving children, or the surviving daughter or her surviving children, shall have the remaining two-thirds thereof.

The provisions herein made for my wife, Leila K. Liebman, are in lieu of dower and of a year's support.

The will further directed that the executrices be not required to make or file inventories, appraisements, returns or reports to any court or to give any bonds. The executrices were given full power of authority to do any actions which, in their judgment, were proper in the control, management and conduct of the estate, expressly including the power to buy, sell, invest in, reinvest in, or lend upon real and personal property without order of any court.

In 1941 the gross income from the trust estate was $53,239.25, consisting of $47,719.25 from dividends and $5,520, interest. In December 1941 the executrices sold 195 shares of the common stock of Texas Paper Co. for $1,170. These shares were part of the assets of Isaac Liebman on the date of his death and were valued on the fiduciary income tax return for 1941 as of the date of decedent's death at $100

a share, or a total of $19,500. In this fiduciary return the executrices deducted from the income of the estate for 1941 one-half of $18,330 as a loss sustained on the sale of this stock and reported the remaining income, $43,723.74, as distributable to the beneficiaries of the Liebman estate. In their individual income tax returns for 1941 petitioners included in income 25 percent and 50 percent, respectively, of the amount which the fiduciary income return reported as distributable to the beneficiaries. Although the fiduciary and individual returns thus treated the capital loss as a deduction against the income of the estate, the entire income of the estate without deduction of that loss, $52,888.74, was distributed to the beneficiaries. The sum of $9,165, the amount of deduction for the loss claimed on the sale of the Texas Paper Co. stock, has not been refunded to the trust estate. The executrices have had no business or legal training, and, in reporting the loss claimed on the sale of the Texas Paper Co. stock in the estate and the petitioners' returns, they acted upon the opinion and advice of counsel.

The question presented is whether in determining the distributable income of the testamentary trust the capital loss sustained by the trust on the sale of shares of stock constitutes a charge against the income of the trust or against the corpus.

Section 162 (b) of the Internal Revenue Code, is as follows:

**SEC. 162. NET INCOME.**

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. \* \* \*

Although Congress has made provisions assuring to either the income beneficiaries or the trustee the benefit of depreciation and depletion deductions, sections 23 (1) and (m), Internal Revenue Code, no similar provision has been made for capital losses of a trust.[1]

---

[1] Section 19.24–7, Regulations 103, provides:

"\* \* \* *Life or terminable interests.*—\* \* \*

"No deductions shall be allowed in the case of a life or terminable interest acquired by gift, bequest, or inheritance, if the estate or trust is entitled to a deduction under chapter 1 but there is no reduction of the income of the life or terminable interest. For example, an estate or a trust in a certain State sells securities at a loss; if, under the laws of that State, the beneficiary suffers no actual loss, then even though the estate or trust is permitted to deduct such loss in making its return, the beneficiary whose income has not been diminished thereby is not entitled to a deduction on account of such loss, but must include in his return the full amount distributed or distributable. \* \* \*"

At the outset the petitioners disclaim any contention that the separate entity of the trust should be disregarded. We think this sound despite the existence of § 108–112, Code of Georgia (1933):

> *Title Merged into Equitable Interest in Executed Trust.*—In an executed trust for the benefit of a person capable of taking and managing property in his own right, the legal title is merged immediately into the equitable interest, and the perfect title vests in the beneficiary according to the terms and limitations of the trust.

At this time we can not know what share, if any, the petitioners will take in the remainder. So far as we know from the stipulated facts there may be children of the life tenants already in being who may turn out to be those who take the remainder interests. The Rule in Shelley's Case would not be applicable, and in any event it has been abolished by statute in Georgia.[2]

Under these conditions, we believe that § 108–112 of the Code of Georgia is inapplicable.

Petitioners make no contention that the law of Georgia differs from the general rule that "losses incurred by the sale or exchange * * * of * * * the trust property are chargeable to the principal," A. L. I., Restatement Trusts, sec. 233, comment b. Absent a contrary provision in the trust agreement, capital losses are charges against corpus. *Anderson* v. *Wilson*, 289 U. S. 20; *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; certiorari denied, 268 U. S. 690. Nor does the rule differ where the income beneficiary is also the owner of future estates in remainder. *T. Rosslyn Beatty*, 28 B. T. A. 1286; *J. Cornelius Rathborne*, 37 B. T. A. 607; affd., 103 Fed. (2d) 301.

The sole contention of the petitioners is that by the terms of the will capital loss is a charge against the income of the trust. It is clear that if such is the manifest intention of the testator, effect will be given thereto. Petitioners base their argument on the provision in item IV of the will that "I further desire and direct that my executors, of [*sic*] their successors, as herein provided, may keep intact all and singular the entire residue of my estate, real and personal, or its proceeds, in order to effectuate the following bequests and devises: * * *" They maintain that this reflects the testator's intention that corpus should be reserved and kept intact by the making up of capital loss out of income. We do not find that such was the meaning or purpose of the quoted provision. Examination of the entire

---

[2] Code of Georgia, (1933).—

§ 85–504. "Heirs," "heirs of the body," "lineal heirs," "lawful heirs," and "issue" declared to mean "children."—Limitations over to "heirs," "heirs of the body," "lineal heirs," "lawful heirs," "issue," or words of similar import, shall be held to mean "children," whether the parents are alive or dead; and under such words children, and the descendants of deceased children, by representation in being at the time of vesting of the estate shall take.

will discloses that the word "trust" never appears in the instrument and that the direction in question is the only indication that a testamentary trust was to be created. The direction to the executors to keep intact the residue of the estate under such circumstances is no more than an indication that they were not to distribute the residue, as would be the ordinary duty of the executors, but were to hold it in trust. That this must have been all the testator meant by the provision is apparent when it is noted that his direction was that the residue *or its proceeds* be kept intact.

The facts here are quite distinguishable from those in *Anna M. Chambers*, 17 B. T. A. 820. The will there had already specified that the residue was devised to named *trustees*, "In Trust, nevertheless for the following uses and purposes * * *," and it was after a listing of the powers and duties of the trustees that the direction was given "to keep said estate together and intact as to principal except as hereinafter provided * * *." The phrase could not there be said to be merely an indication that a trust was intended. Some significance had to be given to the phrase and we concluded that we would be giving it no meaning or reading it out of the instrument entirely if we did not interpret it as an indication that the corpus was to be kept whole at the expense of the current beneficiaries. Furthermore, most of the corpus there consisted of wasting assets. Hence, it was reasonable that the testator would have directed his attention to making a specific provision that the corpus not be allowed to be distributed to the current beneficiaries under the guise of income. As we there pointed out:

* * * Occurring in the will of one who owned depletable assets, the construction given them by the interested parties seems to us entirely reasonable and proper. We are accordingly of the opinion that the distributable income of the trust estate is only the amount of income remaining after the deduction of the reserve for exhaustion and after capital losses have been made good.

As we further pointed out in that case, the parties concerned, including the income beneficiaries, interpreted the phrase to mean that capital was to be kept intact by making reservations out of the income. Mertens Law of Federal Income Taxation has cited that case for the proposition that "a long standing interpretation of a trust instrument by the interested parties should be given great consideration and will not be lightly set aside * * *. The action of the parties under the trust is an important aid." 6 Fed. Income Taxation, § 36.16.

In the case at bar the executrices have distributed to themselves and as beneficiaries have retained the entire income without deduction for capital losses. There is no indication from the agreed statement of facts that they intend to repay any part of such amount. Their actions indicate that it is their belief that the terms of the will do not

require that capital losses be deducted from income. In the fiduciary return and the individual returns of the executrices-beneficiaries, on the advice of counsel, the capital losses of the trust were deducted from the trust income. If such action should be deemed to have evidentiary significance in arriving at the intent of the testator, such significance is neutralized by the action of the same persons in distributing and retaining the total amount of such income undiminished by such deduction.

In *Nellie S. Alexander*, 36 B. T. A. 929, the trustee actually deducted the loss from the income before distribution to the life beneficiary and the life beneficiary accepted that amount as being in full compliance with the terms of the trust. We there had the additional factor not found in the *Chambers* case that the petitioner-life beneficiary was also the settlor of the trust and was in agreement with her husband, the trustee, that such was her intention in creating the trust. *Emma B. Maloy*, 45 B. T. A. 1104, also cited by the petitioners, is not in point. It did not deal with capital losses of a trust, but rather with the amortization of the premiums on bonds, which trust law treats quite differently from capital losses.

Since the primary remaindermen are also income beneficiaries, there is no reason to believe that the settlor wished to protect the remaindermen more than the income beneficiaries.

*Decision will be entered for respondent.*