JOSEPH BLAKE KOEPFLI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11682. Promulgated September 23, 1948.

*Ralph Kohlmier, Esq.*, for the petitioner.
*Douglas L. Barnes, Esq.*, for the respondent.

**358**

OPINION.

DISNEY, *Judge*: The first question presented for our consideration here is whether petitioner is taxable, either under section 22 (a),[1] or

---

[1] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *

sections 161 [2] and 162 (b) [3] of the Internal Revenue Code, on the income of the trust. It would be superfluous to discuss the application of section 22 (a), for we have come to the conclusion, after much study of the interesting briefs presented, that petitioner is liable for taxation under sections 161 and 162 (b). The application of these sections depends upon whether under the text thereof the income "is to be distributed currently." In our opinion, from the facts before us, the income was so currently distributable. Article seventh of the trust instrument contains the statement: "The entire net income received and derived from the trust properties and available for distribution hereunder shall be  *  *  *  paid and delivered  *  *  *  no less frequently than quarterly if possible  *  *  *  " to the beneficiaries. The respondent, of course, relies primarily upon this provision to bring the matter under sections 161 and 162 (b). To overcome the impact of the above quoted language petitioner argues in substance that article second primarily, and other language to which we hereinafter refer, indicates that the income for 1941 and herein involved was not "available for distribution" within the language of article seventh, and that, therefore, that article does not apply. Article second (after providing that in event of dispute the trustor directs that capital gains be treated as income) provides that in all other particulars the trustee is vested with absolute and uncontrolled discretion, so far as lawful, "to determine what shall constitute principal or corpus of said trust or the gross income therefrom or net income available for distribution under the terms of this trust." Petitioner,

---

[2] SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this chapter upon individuals shall apply to the income of estates or of any kind of property held in trust, including—

*  *  *  *  *  *  *

(2) Income which is to be distributed currently by the fiduciary to the beneficiaries, and income collected by a guardian of an infant which is to be held or distributed as the court may direct;

*  *  *  *  *  *  *

(4) Income which, in the discretion of the fiduciary, may be either distributed to the beneficiaries or accumulated.

*  *  *  *  *  *  *

[3] SEC. 162. NET INCOME.

The net income of the estate or trust shall be computed in the same manner and on the same basis as in the case of an individual, except that—

*  *  *  *  *  *  *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection, "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

therefore, contends that distribution of the income was discretionary with the trustees and the income was not, under article seventh, "available for distribution," so it was not, under section 162 (b), "to be distributed currently." To support this argument petitioner first points out that article first of the trust instrument provides that a court order shall not be necessary for the "sale, mortgage, lease, disposition or reinvestment of any part of said trust property or of any income derived therefrom * * *"; also that in article first (a) power is given to the trustees to "invest and reinvest the said trust properties * * * as well as all revenues, income, avails and proceeds thereof * * *." The weakness of this point is that, immediately prior to the language first above quoted, article first distinctly provides that the trustees are "hereby authorized to invest, reinvest, and keep invested the whole or any part of the *principal* sums of money of the trust," also that the trustees "are not limited in investing or reinvesting the funds of the trust property or any part of the *corpus* thereof, in legal invesments * * * but may invest and reinvest the same from time to time and keep the corpus invested * * * in investments which seem best." [Italics ours.] To us this language definitely indicates that only corpus is to be invested, and it is not overcome by the following expression, quoted as above by petitioner where in referring to court orders not only as to investments, but as to sales, mortgages, leases, or dispositions, the word income is brought in. In the light of the previous language authorizing investment of *corpus*, we regard "income" in the language relied on by petitioner to have reference to court orders as to sale, mortgage, lease or disposition—a general expression, not demonstrating that reinvestment refers to income, contrary to the earlier language. The same is true of article first (a), relied on by the petitioner, for the sentence is a long and involved expression involving management, control, sale, exchange, investment, and reinvestment, etc., of trust property, revenues, income, avails, and proceeds, and in our view in the course of such general language the use of the word income does not indicate that "invest and reinvest" refers to income, as against the previous limitation of investment to trust corpus. We would not be justified by the general catch-all expressions which petitioner points out in concluding that the trustor did not mean, as earlier stated, that investment was to be of "the principal source of money of the trust," or that accumulation of income is demonstrated.

The petitioner next points out that article seventh (a), (b), and (e) provides that under certain circumstances the trust shall be terminated and that "undistributed income" shall be distributed.

The petitioner concludes that the language of article seventh as to quarterly distribution of income, when read with the other provisions

relied on by him, indicates that the income available for distribution is the income which the trustees have in their discretion elected to distribute and have not placed in the category of undistributed income and reinvested pursuant to the other provisions.

We have examined petitioner's contentions with care. First, we do not think them valid so far as concerns the reference to undistributed income in connection with the termination of the trust. It is obvious that upon the termination of the trust there might be some undistributed income unless it terminated immediately after the distribution of all income, so we consider this a phrase of no value to the petitioner's contention. Article second, however, has occasioned close study. We construe it to mean as follows: The settlor at once disposes of any question as to how capital gains shall be treated and says they shall be treated as income. (That the article says "In the event that a dispute should arise as to what is corpus or income * * *" before providing that capital gains be treated as income, we take to mean merely that they shall be so treated, and that any question on that score is settled in advance by the trustor. It can not reasonably be considered to mean that trustee and beneficiary could, if there was no dispute, agree that capital gains should be added to corpus.) He then goes on to provide that in all other particulars the trustee (or trustees) have uncontrolled discretion in certain respects: The first is to determine what shall constitute principal or corpus. This, of course, is on its face not sufficient to give the trustee discretionary power as to distribution of income. The next is discretionary power to determine what shall constitute "gross income therefrom," that is, from the principal or corpus. We likewise see in this language no discretionary power as to disposition of trust income. Lastly, the settlor gives the trustees discretionary power to determine "net income available for distribution" under the terms of the trust. This language too, in our opinion, fails to confer the power for which the petitioner argues. Determination of the net income would involve questions of expenses, deductions, etc., but such power is far from one to determine whether income shall be distributed to the beneficiaries. It seems much more reasonable to interpret the language as meaning that the trustees may figure the net income and that after it is so determined it is, consistent with article seventh, available for distribution.

Article sixth provides that the trustee shall "first fully pay and discharge" the expenses, including taxes and trustee's compensation. Then follows immediately the language of article seventh that "The entire net income received and derived from the trust properties and available for distribution hereunder * * *" shall be paid to the beneficiaries. This indicates, we think, that "net income * * * available for distribution * * *" means what is left after payment

of the expenses just mentioned by the instrument, rather than what is determined by the trustee to be distributable. That it was the intent of the trustor that the net income go to the beneficiaries according to their respective proportions is plainly indicated in article ninth, which sets forth that, if within the discretion of the trustee such net income should not be sufficient to provide for the reasonable needs and comforts of the beneficiaries, the trust principal could be expended to the extent determined to be adequate to provide for the beneficiary during periods of illness or other want or necessity.

Intent to distribute income currently is also strongly indicated by article twelfth, which provides that the trustee "shall and will render each beneficiary thereof a correct accounting at the end of each and every year * * *," showing "the current amount of income and disbursements during such year * * *." Had there been no necessity for current distribution, the provision would have been pointless. In addition, the provision of article seventh that income available for distribution should be paid "no less frequently than quarterly if possible" goes far to negative any idea that income could be accumulated instead of paid out. If there was any income it was, of course, possible to pay it out. The use of the word "possible," as well as the quarterly payment, is inconsistent with the thought of accumulation.

The petitioner's argument amounts to this: That the trustee had discretionary power to accumulate income for distribution in a later year. This is in fact what had been done in 1939 and 1940, for income of each of those years was paid to the petitioner in the succeeding year and the petitioner now contends that the income of 1941 is not distributable to him in 1941. The weakness of this contention is that the trust instrument nowhere provides or refers to accumulation of income for distribution in later years or otherwise. It is not uncommon for trust instruments to provide for accumulation of income, such as during minority of a child and for payment to him at majority. Had there been intention to accumulate income, obviously such idea could easily and simply have been expressed in the trust instrument. Yet the word accumulate does not appear therein. We are, nevertheless, asked to infer it, from language which in our opinion altogether fails to sustain the inference. As above stated, we have concluded that the first sentence of article second of the trust instrument was intended to provide definitely that capital gains should be income and not augmentation of the corpus. With capital gains considered as income, only three possible courses of action appear to be open to the trustee. If the instrument so provided, he might, as the respondent contends here, distribute the income currently; second, he might accumulate the income for distribution in later years; and, third, he might add the income to the corpus. The trust instrument here is possibly open to

the construction that except as to capital gains the trustee might add income to corpus. However, if, as we have concluded, the settlor did not intend capital gains to be added to corpus, it seems unreasonable to think that he intended other income (for instance dividends) to be added to corpus. We therefore think the language as to allowing the trustee to determine what shall constitute principal or corpus was not intended to permit him to add income to the corpus, but that it had reference rather to the determination of the status of the proceeds of sale of corpus or additional contributions thereto.

If, however, we are wrong in this respect and the trustee could add income other than capital gains to corpus, that situation is not presented here. The petitioner does not contend that the income for 1941, here involved, was added to corpus, and treatment of the income for 1939, which appears to be the treatment contended for by the petitioner here for 1941, likewise indicates that there was no addition to corpus, for article ninth of the trust instrument, as above seen, provides for distribution of corpus only in case net income is insufficient to provide for the reasonable needs and comforts of the beneficiary, in periods of illness, want, or necessity. Yet income for 1939 was distributed in 1940 with no indication of such illness, want, or necessity and without prior application of the 1940 income to the reasonable needs and comforts of the beneficiary. Likewise, in 1941 the petitioner received 1940 income without prior application of the 1941 income, for under petitioner's theory the 1941 income was not distributed, and with no suggestion of illness, want, or necessity. Petitioner's theory, therefore, is plainly not based on addition of the income to corpus; therefore, it is and must be that income may be accumulated. We find in the trust instrument no basis for such contention. However, the petitioner offers ground for his theory outside of the trust agreement. He testified that his father, the trustor, stated to him that he wanted a method to protect petitioner's sister, and that he might want for some reason or other to withhold giving her any money or having any money come to her. Though we recognize that such testimony is competent in this action between the petitioner and the respondent, we are unable to give it the weight desired by the petitioner. It is, of course, highly interested testimony. It is given some sixteen years after the drawing of the trust instrument. In particular, we feel that, since it is to the effect that income could be accumulated, it is not logically explanatory of, but contradictory to, an instrument which nowhere provides for such accumulation, but provides for quarterly distribution of income. The testimony might be viewed differently had the instrument provided for accumulation of income, though in ambiguous or self-contradictory provisions. The instrument here involved containing no such provisions, we may not logically give more

than a minimum of weight to testimony which imports into the picture something not mentioned in the trust instrument. The language used in article second is not, in our view, after much study, rationally to be considered as meaning that there should be accumulation of income, and such meaning, of accumulation of income, should not be permitted to be added by petitioner's testimony.

However, the petitioner further points to the instrument executed on June 23, 1937, by the settlor, Joseph O. Koepfli, and his wife, as well as the petitioner, entitled, "Construction, Interpretation and/or Amendment of the Trust." As an amendment we reject it immediately, since the trust specifically provides that there is no reservation by the creators of the right or power to revoke, modify or alter "in any respect whatsoever." As construction or interpretation, the instrument of June 23, 1937, so far as executed by the petitioner, is subject to the same weaknesses as his testimony above discussed. As concerns the construction or interpretation by Joseph O. Koepfli and his wife, the instrument, they being dead at time of trial, is a declaration of deceased persons. Unless self-disserving, such an instrument may not safely be given weight. The maker thereof is not available for cross-examination or testing of his memory, interest, or bias. Obviously, here construction or interpretation was self-serving in that it construed the instrument as desired by the trustors and in favor of their son, the petitioner here. This seems the more true since the instrument construing or interpreting the trust instrument was drawn at a time when a dispute had arisen with the Bureau of Internal Revenue as to the treatment of the income of the trust, as to whether it was discretionary or mandatory. The dispute was the occasion of the drawing of the instrument. Obviously, an instrument drawn to sustain the views of the interested parties in a dispute which was in effect the same dispute as here involved is self-serving evidence, and, to say the least, of dubious value. We think we could not soundly base a conclusion thereon and that we should not give it weight, but should follow the instrument itself, which, as above stated, altogether fails to state or, in our opinion, to infer that trust income could be accumulated for distribution in later years, as the petitioner desires.

The petitioner urges also that the fact that he did not receive any income from the trust prior to 1934 indicates that the parties construed the trust as discretionary. We can not give weight to this idea, for we are not informed by the record whether any income had been realized prior to 1934. We can not so assume. The trust corpus was at that time National Biscuit Co. stock, which depreciated greatly in value between 1931 and 1934, so that it is possible that the trust may not have had any income prior to 1934. Moreover, failure to carry out a trust provision is scant proof that it does not exist,

particularly in a family matter such as this. We note in this connection that though article twelfth, as above seen, positively required rendition of an annual accounting to each beneficiary, none was ever made by any trustee.

For the above reasons, we hold that the trust income of the taxable year was to be distributed currently and, therefore, it is taxable to the petitioner under sections 161 and 162 (b) of the Internal Revenue Code.

There remains for consideration the question as to whether the petitioner is taxable under the facts upon an amount equal to the capital losses sustained by the trust. The point was raised by the Commissioner in an amended answer. He had, in the determination of the deficiency, taken no issue in this respect with the net income as reported by the petitioner. Of course, if capital losses were charged to corpus petitioner may not deduct them from the trust income taxable to him; but if, on the other hand, they were charged to income, the beneficiary is not to be taxed. *Irma L. Harris*, 5 T. C. 493. The petitioner urges, and we agree, that no evidence was adduced to show that capital losses for 1941 were charged to corpus. Evidence as to previous years does not sustain the respondent's contention. The fiduciary return for 1941 likewise fails to do so. It merely shows that in the computation of fiduciary income certain capital losses were deducted from other income. We therefore sustain petitioner on this issue.

*Decision will be entered under Rule 50.*